Our next case for argument is 24-1299 Bush v. Collins. Mr. Dohakis, please proceed. Good morning. I place the court on behalf of Ms. Bush. I want to thank this court for the opportunity to present her appeal. This appeal asks the court to interpret 38 CFR 3.302B and determine whether the Veterans Court applied the correct interpretation. This appeal centers really on four words, shown by the evidence. The Veterans Court misinterpreted the regulation when it permitted inferences to take the place of an evidentiary showing. The regulation provides... Wait, time a little. Are you arguing that this regulation requires direct evidence and circumstantial evidence isn't sufficient? I am not. And the reason for that is... There's circumstantial evidence in the form of what they relied on, that this veteran was depressed and unhappy because his wife was cheating on him, right? And they used that to make the ultimate factual finding, drawing the inference that you seem to object to, that there was a reason other than mental unsoundness. And I don't really understand your argument unless it says you can't rely on circumstantial evidence to make a factual finding. That is our argument, Your Honor. And when you look at the regulation... You just said you couldn't rely on circumstantial evidence. Are you now saying that in order for the VA to have displaced the presumption of mental unsoundness here, there would have had to have been something from the veteran or some specific statement that said... And this is very sad and very tragic, and I don't mean to make light of any of this because this is a very difficult issue. And frankly, the regulation seems to me to be out of step with our kind of modern thinking about death by suicide. But nonetheless, we're not arguing about whether the regulation is valid or not. The regulation says if there is evidence showing an adequate motive for the suicide, then the presumption of mental soundness can be displaced, right? I didn't put it directly, but we know what we're talking about. Yes, Your Honor. And I think your argument is that evidence has to be direct evidence in the form of maybe the veteran left a suicide note. Maybe he told one of his friends. Maybe he told his therapist, I'm going to kill myself because my wife is cheating on me. Is that your position, that there has to be something that direct? That is our position, Your Honor. But that goes against all normal rules of evidence and fact-finding and the like, where we always allow inferences to be made from circumstantial evidence. That's particularly probably true in a case like this, where somebody may not leave a suicide note, may not consult with somebody. In fact, that's probably what's going to happen, more likely or not. What is there in the language of that regulation that suggests it has to be direct evidence, not circumstantial evidence? Well, as we said, Your Honor, adequate motive – no reasonable adequate motive for suicide is shown by the evidence. Right, but you want to interpret evidence to exclude circumstantial evidence. I do, Your Honor, yes, because there has to be some linkage between the act of suicide and some motive. It has to be shown. But in your view, circumstantial evidence can never show that? I mean, I find this position very – I mean, I understand you're trying to do your best for your client. But we allow circumstantial evidence in criminal cases that can result in prison imprisonment for life or in some states death. If circumstantial evidence is allowed in those cases, why is it not allowed to rebut a presumption of mental unsoundness? I can't speak for the criminal aspect, Your Honor, because this particular finding is controlled by this regulation. But can you speak to why you think the word evidence, which has a common customary meaning in our legal tradition, in this one instance – because I'm pretty sure you would not argue this in other areas because you would like to rely on circumstantial evidence – why in this one you read evidence as direct evidence, not circumstantial evidence? Because of the verb that's attached to it, Your Honor, is that it's shown by evidence. And we think that a showing of evidence requires direct evidence as opposed to circumstantial. And part of the reason for that is, as you indicated, the seriousness of what's happening here. Often with suicide – and, of course, this is decades after this regulation was written – we have a clear understanding of what is going on. Or we don't have a clear understanding of why people are doing what we're doing. Perhaps you and all of the veterans advocates should get together and petition the VA to change this rule. Because, frankly, it doesn't seem to match up with our current understanding of death by suicide. I mean, just the fact that he may have been unhappy because his wife was cheating on him doesn't mean he wasn't still mentally unsound. They seem to actually go together. But we're stuck with the regulation we have, not the regulation you'd like us to have. Well, I think that the regulation that we do have, Your Honor, fits in this situation and supports, at least at the Veterans Court. Could I just ask you very succinctly, if we interpret evidence to include direct and circumstantial evidence, then the Veterans Court has properly interpreted this and we should affirm, right? If it includes circumstantial evidence, then I believe you're right, Your Honor. The Veterans Court applied a correct interpretation. And I just want to clarify something for the record. For Mrs. Bush's sake, there is absolutely no evidence anywhere that she cheated on her husband, correct? None at all. It was part of his mental unsoundness that he created this fiction in his mind, correct? That's correct. I just want to put that on the record for her sake. Right. And she, of course, denied it at the time and continues to deny that she was ever unfaithful. And we also know that there are, at least from the findings of the VA, that were not disputed. There's no evidence linking his suicide to the fact that he shot her or that he thought that she committed adultery. It was all—and again, it was all suggested in the terms of the board on page 65 of the appendix. The evidence suggested that this could have been an adequate motive for the suicide when, in fact, the facts— and I know the court doesn't look at facts or facts of law, but the facts show that he came to the place with a suicide note already prepared. She said that moments after she shot him, she looked up, and then he killed himself. So this suicide note where he talked about wanting to die was already done, prepared. The idea was already formed, and he just followed through with it. So everything that happened after they met up again after his discharge had really nothing to do with his ideas or his desire to kill himself. One of the important things here for the students in this room to know is about our jurisdiction and how limited it is. Could you tell them about our jurisdiction? Yes, Your Honor. So within—at least from the Veterans Court, the court looks only at questions of law and does not look at—does not review fact-finding or facts to law. However, if there are undisputed facts to the law, then the court would look at that as a legal determination. And at least in this case, we are not necessarily getting to that because our position is that the wrong law was applied. And if that's true, then we are asking the court to remand it so that the Veterans Court, potentially the board, would have to correctly apply the law. It's hard in some of these cases because we can't review facts, and we can't review application of law to facts. And all we can do is look at the law by jurisdiction. We just don't have power to do anything else, especially in a sympathetic case like this. Can I ask you something else? I was looking at and considering your legal argument on the interpretation of the regulation. And under 3.303B, it does say whether—actually, it's B2. It says the act of suicide or bona fide attempt is considered to be evidence of mental unsoundness. Is that circumstantial or direct evidence? Well, I think— Just that sentence alone because I'm looking at the meaning of the word evidence is used in that sentence. I think that would be presumptive evidence, Your Honor. I think that that's a third category because if you continue reading the last part of that next sentence, the act will be considered to have resulted, the act being suicide, to have resulted from mental unsoundness. So this is actually a presumptive evidence, which is a different category, I think. It's different than circumstantial. It's different than circumstantial or even direct because with a presumption, you don't need any evidence to make that fact-finding. The law does it for us. So I do want to just—I still have some time here before my rebuttal, but I do want to point—hit on the Secretary's alternative basis for affirmance. We believe that that would be premature. As we indicated in our briefing, the correct application of the law needs to be done before we can move on to whether there was a condition that caused the mental unsoundness. When we look at the timing of this, he left the military on March 28th. April 4th is when he killed himself and tried to kill his wife. So the timing of that, the fact that the mental unsoundness was the cause of his suicide and the plethora of evidence of his treatment, and as the dissent from the Veterans Court pointed out, there was a diagnosis of a potentially psychosis, which would be a presumptive condition. If his suicide was, in fact, mental unsoundness, then this would need to go back at least to the Veterans Court but probably to the board. If there are no other questions, I'll reserve the remainder of my time. Okay. Mr. Clarkhart. May it please the Court. The Veterans Court's decision should be affirmed for two overarching reasons. First, the Veterans Court did not commit legal error in interpreting Section 3.302. And second, even if it did, there's an alternative basis for affirming the Veterans Court's decision, which wasn't addressed in Ms. Bush's opening brief or meaningfully in her reply brief, which is that any error wasn't outcome determinative because there needs to be a service-connected disability in addition to there being mental unsoundness to allow for benefits under these circumstances, under this Court's precedent, Dolorosa. So I'll start with the legal... So I have a question. There has to be... She's getting benefits, correct? She's now getting benefits. That's correct. So she's receiving benefits. Correct. So how could you dispute whether his unsoundness is service-connected? She's getting benefits. She's getting benefits now based on a 2012 Board decision, which in turn was based on new material evidence. Well, the new material evidence had nothing to do with service connection. It had only to do with a psychiatrist that submitted evidence, right? What did it have to do with service connection? The new material evidence, so I'm looking at the decision... For the student's sake. So she's receiving benefits, and the U.S. government has decided that she is entitled to benefits because her husband shot her four times and committed suicide, and part of that decision includes that his mental unsoundness was related to his time in service, correct? Or she would not be receiving benefits now. So there is service connection has been established sufficient. She's now receiving benefits, correct? She's receiving benefits based upon this 2012 decision. That's correct. And so service connection has been established, or she could not be getting benefits. Well, it has as of 2012. That's right. And it has as of 2012. It's not like something happened in 2012. We're talking about a man who in 1974, is that right? Mm-hmm. Shot his wife four times, four days after getting out of service? Within a week, yes, ma'am. Shot his wife four times trying to kill her, then committed suicide. Correct. And in 2008, I think it was, is that correct? 2012 was the decision, and it dated back to 2008. Because that's when she filed a petition and said, I'm entitled to benefits. So I don't understand your service-connected argument at all because the government has determined that his suicide was in fact service-connected now because there's benefits being given. So I'm looking at Appendix 119, Your Honor, which is the 2012 board decision, which says, although the independent medical opinion is not conclusive as to whether this veteran in service depressive disorder was a factor in his suicide, the finding of a depressive disorder in service is sufficient when combined with CMI's opinion that the veteran was depressed at the time of his suicide to warn a determination that the precipitating mental soundness is service-connected. And so that is based largely on the fact that he had noted depression during service. Correct. He had noted depression during service. So that's not new evidence because that was in his service records. That's right, though what the board in 1975 found was that that depressive condition was a result of drug abuse. So the board found in 1975 that that wasn't service-connected. And the question for this court, because this is a Q case, I don't think this came up during the opening argument, clear and unmistakable error is the framework that the court's looking at this through and what the Veterans Court looked at this through. Just to be clear, the VA has already decided that what they did in 74 was an error or they wouldn't be giving her benefits. Not clear and unmistakable error, I get you. My standard of review on whether it has to go back to an earlier point in time is much higher. But it is true, correct, the VA has already decided that their denial of her benefits in 1974 was in fact a mistake in part based on the new evidence that was submitted, but it was a mistake. That the woman, had she had all the evidence in 1974 that she had in 2008, she'd be getting benefits back to 74. I agree with that case, Your Honor. Doesn't that make you really sad? It makes me really sad. Of course. Of course, it's really that case. I, of course, agree with that. I don't understand why you're spending so much time on the alternative basis for affirmants and not address the basic legal argument here. Well, you made the mistake of leaving. I know. This is his fault. This is his fault. It was very clear from our opening discussion, colloquy, that we really weren't very interested in that. Why, I mean, if the legal argument is that this phrase, when it says evidence, means only direct evidence, what's your response to that? I did start with her in fairness, and I got questions about the second part, and I was trying to address them. Well, you shouldn't have brought it up. Okay. He asked for it. When you're at law school, you have to be careful about these things. We like to demonstrate the full range of questions and advocacy. I mean, isn't it true that evidence throughout the VA system can be both direct and circumstantial evidence? Yes, it is true. In a case like this where the issue is suicide, that becomes especially important because, as some of the questions suggested, there often will not be direct evidence. In this case, the 1975 board did discuss statements from Mrs. Shepard. It discussed a police report. So it was looking at evidence to make its conclusion. Ultimately, in the Q context, the way that evidence was weighed is beyond the scope of the review and beyond the scope of this court's jurisdiction. Can you tell me why you think this regulation makes any sense whatsoever, given our modern understanding of suicide? I mean, is it all suicide, except maybe out of the, like, you know, death with dignity stuff, out of mental unsoundness? I'll try to give some insight into how the regulation is supposed to work, as I understand it. What it starts by distinguishing is between intentional acts and nonintentional acts. And the framework it sets out is if there's not adequate requisite mens rea, then the act is not intentional. You mean like you were cleaning your weapon and it went off? Well, that's not suicide. I don't think it's just that. I think it could be a situation where somebody has lost touch with reality. The phrase that the regulation uses is, did the veteran understand the consequences of his conduct or was he overcome by an irresistible impulse? I mean, I think that's the problem, right? Isn't it? And I know we're not here to do anything about this, but you can understand the consequences of death by suicide, but still be mentally unsound, can't you? But in your view, that's what they've decided here. I'm not suggesting we can do anything about it. Yes. But it's in the whole part of the regulations that don't allow veterans to get benefits based upon their own misconduct. That's right. Which is a little bit hard to understand. Death by suicide is that kind of misconduct anymore, although in the time it might have been. Yes. And so if I thought that the board's 2008 fact findings were incorrect to the extent that they did not give her her benefits going back to when she was shot four times and her husband committed suicide, would I be able to review that? Because I do think that they should have given her benefits back to 1975 or before. If you think the board's fact findings were incorrect, no, the court doesn't have jurisdiction to review fact findings under a 7292D. So if there are no further questions, we ask that the court defer. Thank you, Mr. Carman. Mr. DeHakis. Just a couple points, Your Honor. To Judge Hughes' point, I do want to clarify a bit on my answer to your question about circumstantial versus direct. I think that although circumstantial, if the court finds that circumstantial evidence is allowed, it still needs to be grounded in something. And here it was the way our reading of the case is that it was nearly pure speculation on the part of the board that he wanted to That would be us evaluating an application of law to fact. That was still out of our jurisdiction. Mr. DeHakis, you have an incredibly sympathetic case. But the legal arguments are nearly frivolous. Well, I would just point again to the court to the rest of the regulation, C2, subsection C2, where it talks about reasonable doubt under 3.102. And 3.102 does say specifically that pure speculation is not a reason to deny the application of this law. That's all stuff for the RO and the board in the Veterans Court, though, not us. Right, Your Honor. We can't determine the factual basis. And you're not arguing that they misinterpreted reasonable doubt. We are not, Your Honor. But it does play a part in assessing what the evidence shows, whether it's circumstantial or direct evidence, as we suggest. And in closing, I just want to thank the court for their sympathy to Mrs. Bush. I know she's very appreciative. I thank both counsel in this case as taken under submission.